[Cite as *State ex rel. Fairfield City Schools v. Indus. Comm.*, 129 Ohio St.3d 312, 2011-Ohio-2378.]

THE STATE EX REL. FAIRFIELD CITY SCHOOLS, APPELLANT, *v.* INDUSTRIAL

COMMISSION OF OHIO, APPELLEE, ET AL.

[Cite as *State ex rel. Fairfield City Schools v. Indus. Comm.*,

**129 Ohio St.3d 312, 2011-Ohio-2378.]**

*Workers' compensation — R.C. 4123.343 — Employer sought handicap reimbursement for total disability compensation awarded to one of its employees — Employer did not prove that employee's hypertension qualified as a cardiac disease as that term is used in R.C. 4123.343.*

(No. 2010-0674 — Submitted March 22, 2011 — Decided May 24, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-271,

2010-Ohio-871.

_____

**Per Curiam**.

**{¶ 1}** Appellant, Fairfield City Schools ("Fairfield") seeks handicap reimbursement under R.C. 4123.343(D)(2)[1] for total disability compensation awarded to one of its employees. Created in 1955, the handicap reimbursement program encourages employers to hire persons with certain mental or physical conditions that could hinder employment. R.C. 4123.343(A)(1) through (25). Am.Sub.H.B. No. 642, 126 Ohio Laws 947. The program does so by charging to the state surplus fund all or part of the cost arising from an industrial injury

_____

1. "(2) Whenever a handicapped employee is injured or disabled or dies as a result of an injury or occupational disease and the administrator finds that the injury or occupational disease would have been sustained or suffered without regard to the employee's pre-existing impairment but that the resulting disability or death was caused at least in part through aggravation of the employee's pre-existing disability, the administrator shall determine in a manner that is equitable and reasonable and based upon medical evidence the amount of disability or proportion of the cost of the death award that is attributable to the employee's pre-existing disability and the amount found shall be charged to the statutory surplus fund.

sustained by an employee who has one of the statute's enumerated "diseases or conditions" if the disease or condition either caused or aggravated the industrial injury leading to death or disability.

## Case Background

{¶ 2} Edward Carpenter Jr., a Fairfield employee, has had hypertension since at least 1995. In 2002, he injured his back while at work. Carpenter's back injury has resulted in a considerable amount of disability compensation—first temporary total and now permanent total. In 2008, Fairfield requested handicap reimbursement from the Ohio Bureau of Workers' Compensation for at least part of the disability payments made to Carpenter. Fairfield's application alleged that Carpenter's preexisting hypertension is a cardiac disease, one of the conditions listed in R.C. 4123.343(A)(3), that delayed his recovery from back surgery, contributing to prolonged disability payments.

{¶ 3} Fairfield submitted the April 5, 2008 report of Dr. Paul T. Hogya, who had reviewed Carpenter's medical records. The report stated:

{¶ 4} "The claimant does have history of hypertension with complicating cardiac arrhythmia in 1995. His hypertension has been managed with Lisinopril. * * * The hypertension would reasonably contribute to a handicap assessment with respect to his multiple lumbar surgeries * * *. Chronic hypertension plays a role in delaying healing from these surgeries, exacerbated by his chronic smoking. Hypertension results in stiffer arteries, which limits healing, particularly involving the fusion surgeries. Excellent blood flow is required to consolidate the bony fusion. In this case, there was a failed back surgery with non-union. This led to the two-stage surgery on 12/2/03 and 1/24/04. Consequently, there was substantial delay in recovery, resulting in the need for a second procedure, which involved two stages over two months. Therefore, a reasonable handicap assessment attributed to the cardiac disease (hypertension) would be 50%."

{¶ 5}   The bureau rejected Dr. Hogya's report as "insufficient to establish cardiac disease as a pre-existing condition that delayed recovery."   It described the report as "speculative and tenuous" and stated that the report did not show that Carpenter's injury was affected by hypertension but instead merely explained that in general, injuries are affected by hypertension.   It accordingly denied reimbursement, and Fairfield appealed to appellee, the Industrial Commission of Ohio.

{¶ 6}   A commission district hearing officer denied reimbursement, and on July 29, 2008, a staff hearing officer ("SHO") affirmed that decision for three reasons: (1) hypertension is not an R.C. 4123.343(A) enumerated condition, (2) Fairfield did not establish that Carpenter's hypertension constituted a cardiac disease, and (3) there was insufficient evidence to establish that Carpenter's high blood pressure contributed to the cost of his workers' compensation claim.

{¶ 7}   Fairfield appealed to the commission and submitted an August 12, 2008 report from Dr. Hogya in which he explained why hypertension should be considered a cardiac disease.  The commission, however, refused further appeal.

{¶ 8}   Fairfield filed a complaint in mandamus in the Court of Appeals for Franklin County, challenging the denial of reimbursement.  Fairfield relied heavily on a newly submitted piece of evidence—a one-page Bureau of Workers' Compensation document entitled "Handicap Reimbursement Guidelines."  This document stated that "[e]vidence of high blood pressure/hypertension, without more explanation, does *not* constitute evidence of cardiac disease." (Emphasis sic.)  Fairfield argued that it had satisfied the guidelines through Dr. Hogya's reports that explained why Carpenter's hypertension should be considered a cardiac disease.  Fairfield  urged the court to find that the commission had abused its discretion in rejecting that evidence.

{¶ 9}   The court of appeals denied the writ. It stressed that the guidelines on which Fairfield relied were not commission guidelines, but bureau guidelines

that had not been promulgated in accordance with R.C. 4123.343(A) and 119.03. Describing them as internal guidelines, the court of appeals noted that Fairfield cited no authority that bound one state agency to the internal guidelines of another. The court also held that the commission's exclusive authority to weigh the evidence permitted it to find that Dr. Hogya's reports were insufficient evidence. Emphasizing the commission's substantial expertise in the area of handicap reimbursement, the court of appeals held that the commission did not abuse its discretion in finding that Carpenter's hypertension was not a cardiac disease for handicap-reimbursement purposes.

{¶ 10} Fairfield now appeals to this court as of right.

## Analysis

{¶ 11} For handicap reimbursement to issue, an employer must first establish that its employee had one of the enumerated conditions under R.C. 4123.343(A).[2] The condition currently at issue—hypertension—is not a

---

2.   {¶a} "(A) As used in this section, 'handicapped employee' means an employee who is afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character that the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining reemployment if the employee should become unemployed and whose handicap is due to any of the following diseases or conditions:

{¶ b} "(1) Epilepsy;

{¶ c} "(2) Diabetes;

{¶ d} "(3) Cardiac disease;

{¶ e} "(4) Arthritis;

{¶ f} "(5) Amputated foot, leg, arm, or hand;

{¶ g} "(6) Loss of sight of one or both eyes or a partial loss of uncorrected vision of more than seventy-five per cent bilaterally;

{¶ h} "(7) Residual disability from poliomyelitis;

{¶ i} "(8) Cerebral palsy;

{¶ j} "(9) Multiple sclerosis;

{¶ k} "(10) Parkinson's disease;

{¶ l} "(11) Cerebral vascular accident;

{¶ m} "(12) Tuberculosis;

{¶ n} "(13) Silicosis;

{¶ o} "(14) Psycho-neurotic disability following treatment in a recognized medical or mental institution;

{¶ p} "(15) Hemophilia;

{¶ q} "(16) Chronic osteomyelitis;

designated condition. Cardiac disease is listed in R.C. 4123.343(A)(3), although the term is not defined in the statute.

{¶ 12} Fairfield argues that Carpenter's hypertension should be classified as a cardiac disease and advances two propositions: one relies on dictionary definitions and would make hypertension a cardiac disease per se; the other relies on Dr. Hogya's reports and would qualify Carpenter's hypertension as a cardiac disease. The commission contends that hypertension should not be considered a cardiac disease per se and argues that the evidence in this case did not support a finding that Carpenter's hypertension qualifies as a cardiac disease. For the following reasons, we hold in the commission's favor.

{¶ 13} Fairfield initially argues that because R.C. Chapter 4123 does not define "cardiac disease," it must be "accorded its plain, everyday meaning." *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 70, 525 N.E.2d 1386. In asserting that Carpenter's high blood pressure should be classified as a cardiac disease, Fairfield relies on extrapolation: because the term "cardiac" means relating to the heart and hypertension affects the blood vessels that supply the heart, hypertension is a cardiac disease. We reject this proposition.

{¶ 14} If the mere fact of blood circulation were sufficient to transform a chronic condition into a cardiac disease, then ostensibly leukemia and anemia would also be cardiac diseases because they, too, affect the blood. Fairfield's

---

{¶ **r**} "(17) Ankylosis of joints;
{¶ **s**} "(18) Hyper insulinism;
{¶ **t**} "(19) Muscular dystrophies;
{¶ **u**} "(20) Arterio-sclerosis;
{¶ **v**} "(21) Thrombo-phlebitis;
{¶ **w**} "(22) Varicose veins;
{¶ **x**} "(23) Cardiovascular, pulmonary, or respiratory diseases of a firefighter or police officer employed by a municipal corporation or township as a regular member of a lawfully constituted police department or fire department;
{¶ **y**} "(24) Coal miners' pneumoconiosis, commonly referred to as "black lung disease";
{¶ **z**} "(25) Disability with respect to which an individual has completed a rehabilitation program conducted pursuant to sections 4121.61 to 4121.69 of the Revised Code.

reasoning could permit employer reimbursement for many conditions never anticipated by the legislature.

{¶ 15} Second, Fairfield's logic would permit handicap reimbursement in situations where a person's hypertension has never manifested itself with the symptomatology of a cardiac disease. High blood pressure can certainly lead to very serious heart problems, but many people—including Carpenter—control their hypertension and suffer no heart-related effects. Dr. Hogya reported that Carpenter's hypertension has been effectively managed with medication, and he did not conclude that Carpenter's hypertension has had any cardiac implications.

{¶ 16} Third, the "primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 15. In this case, the interpretation that Fairfield advocates is not consistent with the General Assembly's purpose in creating the handicap reimbursement program.

{¶ 17} The stated purpose of R.C. 4123.343 is to encourage employers to hire and retain handicapped employees with the conditions that are listed. To an employer, any of the conditions may raise concerns about an employee's productivity or the employer's ability to respond in the event of an emergency. Without an incentive to hire those suffering from these conditions, an employer might be less inclined to employ them.

{¶ 18} According to the American Heart Association, however, one in three adults has hypertension,[3] so no incentive is needed to hire these persons into the workforce—they are already there. Equally important, high blood pressure, unlike many of the enumerated conditions, can be controlled, so it is far less likely to disrupt workplace productivity or safety. Simply put, hypertension is not the impediment to employment that the enumerated conditions might be.

---

3. http://www.heart.org/HEARTORG/Conditions/HighBloodPressure/AboutHighBloodPressure/Understanding-Blood-Pressure-Readings_UCM_301764_Article.jsp.

{¶ 19} This is not to say that hypertension can never be classified as an R.C. 4123.343(A)(3) cardiac disease. The commission, however, found that the evidence submitted by Fairfield did not establish that Carpenter's hypertension constituted a cardiac disease.

{¶ 20} The commission is exclusively responsible for evaluating evidentiary weight and credibility. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 20-21, 31 OBR 70, 508 N.E.2d 936. Dr. Hogya's April 5, 2008 report stated that Carpenter's hypertension had been successfully managed with medication, and he did not attribute any cardiac symptoms to that condition. From this, the commission concluded that Carpenter's hypertension was not a cardiac disease. Fairfield argues that any shortcomings in that report were remedied by Dr. Hogya's August 12, 2008 narrative. That report, however, was submitted *after* the SHO hearing, so it is not relevant to discussion of the SHO's order. *State ex rel. Cordray v. Indus. Comm.* (1990), 54 Ohio St.3d 99, 561 N.E.2d 917.

**Conclusion**

{¶ 21} We accordingly affirm the court of appeals' judgment holding that the commission did not abuse its discretion in denying Fairfield's application for handicap reimbursement.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Coolidge Wall Co., L.P.A., David C. Korte, Michelle D. Bach, and Joshua R. Lounsbury, for appellant.

Michael DeWine, Attorney General, and Elise Porter, Assistant Attorney General, for appellee.

_____